Ruppin, Judge,
dissentienle.~JJ\mi the question of fraud, I fully concur in the opinion delivered as that of the court. If the deed was intended to del ay or hinder creditors, or for favor to the maker, or for his ease, even for one week or day, I should hold it fraudulent and void. And if those facts appeared on the deed itself, by a fair construction of it, I should likewise hold it to be the province and duty of the court to pronounce it fraudulent. But where the provisions of the deed point to the contrary purposes, namely, the real satisfaction of creditors in >a convenient time, and in a convenient manner, or leave it equivocal whether one or the other was its object, it is then acaso, where the wrong intent is not to be gathered from the acts done, as they appear in the instrument, and the court cannot determine the question. The actual intent is then open to proof aliunde and not being declared in the instrument, or plainly to be inferred from it, is to *138 |,e found by the jury. And as that may be found to be honest or evil, the court will instruct the jury as to the u legal consequences.
Here there seems to be nothing in the deed itself, to raise an imputation against it; unless every conveyance, by way of security of some debts, in preference to others, be void. There is no benefit reserved to the debtor, which can be supposed to have been the object, or one of the objects of making the deed. Until a sale, the possession is to remain with him. But this is obviously not for his ease — not to leave him the enjoyment of an estate, protected by this conveyance from his general creditors. It was for the convenience of the trust property, and a reasonable accommodation to the trustee ; who ought not to be obliged to enter into immediate possession, take the management of the estate, and subject himself to an account. The deed was executed in September, when it is to be supposed the lands were in crop, and the slaves engaged for the year. The sale was to be at the will of the trustee, or of a majority of the creditors; and it is to bo supposed, unless the contrary be proved, that the creditors would act for their own interest, and require the sale in a reasonable time. If they do not, a long continued possession by the creditor would furnish strong evidence of the original fraudulent intent. It is not to be inferred that they will not, because a majority might be under the influence of the debtor, and might, to favor him, sacrifice their own interests and those of the minority. If such be the fact, it is open to proof. It can be shown, that the apparent fairness is illusory : that the debtor had come to an understanding with a majority or a large portion, that the deed should be so used, and upon that footing made the conveyance. The actual intent would frustrate their purposes, and place the deed on a level with one having a clause of revocation by the grantor himself, with this difference only, that the latter is so expressly fraudulent, that the court does not need a jury to find the intent, but can say directly to the jury, the deed is void; while in the former, the intent can only be gathered from extrinsic evidence by the jury. *139 and then applied under the advice of tbc judge. ■ But hero there was no proof of that sort. Nor are any hard or unreasonable terms imposed on the creditors. No releases are required from them, before they can avail themselves of the trusts in their behalf; but the debtor is to bo still left personally responsible for balances due. It is said, however, that the deed obviously delays Col-/ins. under the pretence of securing him. For lie was then pursuing an action for Ids debt, in which he would have a more direct and speedy method of raising the mo. ney. True, that effect does follow ; and if that was the intent, it avoids the deed. But if the intent was bona fi-de.to secure the debts mentioned in the deed, and in the order therein prescribed, then it is not fraudulent; although the effect may be to dolar and ihiallv to defeat „ ,,- m, , . . . " „ ,, v , , Collins. That was not the object oí the conveyance, but only a consequence of it. That con,sequence will not vitiate the instrument, provided it he only incidental to the other and lawful purpose, of discharging other debts in preference. That Collins is provided for in the deed, docs not make-it covcnous as to him, in reference to Ids bettor remedy by judgment and execution then in prospect, more than it would, had that provision been left out. It is clear, the other creditors might have been preferred, to his entire exclusion, although his debt was then in suit. And the question then is, was the preference given to true debts, and for the real purpose of satisfying them, which to he sure may, and perhaps must produce a loss to Collins, or was that professed purpose feigned; and the real and primary one, in fact, to defeat another creditor. In the one case, the intent is allowed by law ; in the other, it is forbidden.
■Peris.ymmj. signment of his oneP<£bt t<fano-dier? andaltho' prcfeéncímay be dclay a such^elay "was not the intent of the debtor, tlte deed is valid.
An assignment, purpose ofpay-witu^an express result, asao-nor* is not on that account ^f^entupon
It has been further contended, that this deed is fraud-«lent, because the surplus is reserved to Creeqj. That is no more than would have resulted without such rescr-vation. It will denote a fraudulent intent or not, according to the proportion the value of the estate conveyed, bears to the debts secured by the deed, If the deed covers a great deal of property as a security for a small debt, so that 1he resulting interest to .the debtor is really the valuable *140 s action, interest, the purpose professed is so obviously a mere pre-tence, as not to conceal the true purpose from the detection of any jury.- It is obvious in such a case, that the debtor is providing for himself and not for his creditors. here the whole estate of the debtor is conveyed; and the debts to be raised out of it arc so large, as probably to absorb the whole, and then be unsatisfied. Thiscircum-stance therefore, cannot impugn the fairness of the tran-Nor do I see any thing else in the case, that can, or ought, except the violation of the sound rule in morals, (which the law has not yet incorporated with itself, ) which would as much constrain a perfectly honest man, unable to pay, to share his substance, impartially and equally amongst his creditors, as it would make a man of common honesty- scorn to keep back a single sti-ver for himself.
from which the jury may infer a fraudulent intent. ' But if the more*S'vakabieS than the debts circuinstance &
Upon the question about the delivery of the deed, I confess, I doubt extremely. I should hold the deed to be good, though executed in the absence of Mr. Moore, and though it was to be executed by him afterwards, and was so executed in Creecy’s absence, if there were 'evidence to show, that it was delivered to, or taken by any of the creditors, or by any body for Mr. Moore, upon the agreement that it was then Creecy’s deed, though Moore had not sealed, and was to seal. But in the absence of such evidence, I must suppose, that Creecy kept the deed himself; because I cannot presume that he intended an absolute execution, until Moore should also execute it, and come under the obligation imposed by the covenants on his part. Those relate to the application of the proceeds of the sales to the payment of the debts, and the surplus to Creecy himself. In the absence of all proof as to the custody of the deed from the time that Creecy signed it, until it was produced in court with Moore’s signature, and that of a second witness, the presumption is, that Creecy himself held it. And this is fortified by the failure of the plaintiff to call the second witness, who probably attested the execution by Moore, and could have stated the time, and also the person who produced the deed. But as the case is to go back to a new trial, I do not deem it material farther to discuss this point.
Per Eotfiíi, J. An act required by law is not considered as performed, altho’ the p erformance was prevented by the act of God. Hence, where a deed was not duly registered by reason of the death of the register, it passed no title to the vendee.
Eat I cannot yield my assent to the proposition, that there has been a due registration of this deed. For the want of it, I think it is void as against the defendant, by the express words of the act of 1820. It "is said) however, upon the authority of Ridley v. McGehee, (ante 2 vol. 40.) that what ought to have been done by a public officer, should be considered as done ; and that as the party had done his duty, he shall have the benefit of that, notwithstanding the officer of the law omitted his. I cannot perceive the force of this reasoning, when applied to this cáse. I admit, that if one covenant with me to do a particular act, and Í discharge him from it, or hinder the performance, it is to be taken as performed. But there is no instance of this being extended to third persons. In relation to them, an act required by the law, or by contract, must bo strictly performed. If one contract to convey me an estate, if A go to Romo by a particular day, and he prevents A from going, he shall convey ; for he was the cause why the condition was not performed. But if A die, I cannot claim the estate, although my claim has been defeated by the act of God ; because the stipulation was for an act to be done ; and he, in whoso favor that stipulation is, did not prevent it. Still less can duties of public officers be thus dispensed with. Ar. expression of Ghief-J ustice Makshaxi., in the case of Marbury v. Madison, (1 Cranch. 161) has been relied on to the contrary. But I think that a perversion of the meaning of the judge. That case was a motion for a mandamus to the defendant as Secretary of State, to compel him to deliver to the plaintiff a commission, as justice of the peace for the District of Columbia, which had been made out and signed by the late President Adams, and left by the- defendant's predecessor in the office. Several objections were made; one, that the commission was a deed, and had never been delivered ; another, that it was not complete, because .it had not been enrolled. In answer to this last, the Chief-Justice says, it was the defendant’s duty to enrol it, and therefore it will be taken as done. But how ? Plainly, as against the defendant; not third persons. He means *142 nothing more than this; that the defendant could not justify the non-pcrformance of one duty by alleging the omission of another. But ho does not determine, that Marburij Mas a justice of the peace — had a title by virtue of a commission not enrolled and not delivered, because the defendant ought to- have performed those completing ceremonies. If that had' been the. decision, it would have been in point here; but I apprehend, that no person' can suppose that such a decision ever would have been made. If that had been the opinion of the court, it would have saved all the painful argument in the case, and the extrajudicial reasoning of the judge, because the mandamus was altogether unnecessary, since the plaintiff already held the office, without' the possession of the commission.
Nor can I imagine any other case, where an officer omits a duty, in which the party entitled to have that duty performed has a right to consider it as performed, as against another person. If l deliver an execution to a sheriff, arid a second person does the same, but mine basilic legal preference, and yet the sheriff pay the money to the other j I cannot sue the party for the money, 1) ut must take my redress against the officer. B ut it is said,* let the person who-is injured by the want of registration sue tbe register ; the law will not visit his neglect upon him who has actively done all he could do. I agree, that the party injured ought to sue, and that such suit is deemed in law a competent redress. But who is that person ? Surely he who claims under the deed, and not he who claims against it. If it is to be considered as registered, then a third person cannot possibly be injured by not registering it, nor can lie to whom it is made ; because he loses nothing by the want of registry. Tiren here is the case of an officer, omitting a positive duty expressly enjoined by statute, and. he is responsible to no pne. The decision seems to me to be a repeal of the registry acts; and to • encourage .officers in their negligence. The only safeguard, in my opinion, is to give the party who has the immediate and direct interest in the performance of the required act his remedy by action *143 for the non-performance. And this is particularly true in regard to the registry acts. For how can the creditor show an injury ? The law for his benefit requires the deed to be enrolled, that he may know the contents of it, and the extent of his debtor’s means. If the register omit to do it, and the deed be lost by that cause, the party claiming under it is injured. But he who claims against it, as creditor of the maker, cannot be. He loses nothing by the want of registration. For if the omitted act had been performed, it would only have made the deed, by the express terms of the law, effectual against the creditor’s rights by execution. But suppose a purchaser to be concerned instead of a creditor. The unregistered deed, even with notice, is not valid at law. It does not pass the title, but raises a trust in equity. All the questions upon the effect of notice are in equity ; except in Massachusetts, where there is no such court. And the relief in equity is not upon the footing of a construction of the statute, but upon that of fraud dehors, by reason of the notice. (Le Neve v. Le Neve, 3 Atk. 646.) And there is no case even in that court, in which the deed has been set up against a creditor or purchaser, upon the score of accident or the act of God. Indeed the unregistered deed is not made good at law, but the subsequent purchaser with notice is decreed to convey. The first purchaser makes out his title at law, under the conveyance from the last purchaser. For a deed of bargain and sale must be pleaded at law as “ a deed enrolled within six months, according to the form of the statute.” (1 Saund. Rep. 251, note.J Where the parties.are equally innocent, the loss must rest where chance or Providenceplaces’it. Purchasing with notice — fraud—is the only ground of relief. This has been decided in a most remarkable case, in New-York, after long consideration, and by the unanimous opinion of the judges. In Frost v. Beekman, (Johns. C. R. 288) a mortgage for S3,300 was delivered into the registry office for enrolment, and was enrolled ; but by mistake was enrolled as a mortgage for $ 300 only. The mortgagee did not think of setting this up at law for any purpose. But he-filed his bill in *144 equity, to have it declared there a good mortgage for $ 3,300. He did not even claim this, as against a third person, upon the score of accident; but upon that of notice, upon the principle, that he who knows of the existence of a document, must take care to inform himself truly of all its contents. The chancellor, Kent, held that registry was required to enable the incumbrancer to give notice to all the world of the extent of his incum-brance, and that registry was such notice ; but that the registry was not notice of any thing but what is therein seen, although the officer, and not the party, is the person to compare the instrument with the registry. The deed was declared to be a mortgage for >§ 300 only. Beekman v. Frost (18 Johns. Rep. 544) is the same case on appeal, in the Court of Errors ; and the chancellor’s decree on this point is affirmed without a dissenting voice. No case can bo more direct or stronger — that even in equity, the case at bar-'could not stand. For, (if there was any equity against a «‘editor, ) the lien of Collins'’ execution is anterior to any notice of the deed. But let us carry this a little farther*, and suppose the deed not registered even at the trial. Could it then be read in evidence, upon the ground that there was no register, or that the register had neglected or even refused to register it ? The statute says positively, it shall not; and I think we cannot say, it shall. Besides, it opens the door to most extensive and innumerable frauds. A party has nothing to do, but combine with the register, and get the latter to refuse to put the deed upon record, and he may safely keep it concealed in his own pocket ever after. For if a creditor, who is defeated by it, sues the register, the latter asks him, how are you hurt by my refusal r For if I had registered the deed, you could not have reached the estate, and you are no worse off now. Upon every principle then, and upon authority, I dissent from the reasoning in Ridley v. McGehee. But even if that case be right, it is not an authority here ; because the deed was there in the custody of the officers of the law for the whole time. Here the party took the deed from the clerk, who-was bound by the acts of 1807 and 1814 to deliver it to *145 the register within ten days ; in which case it might hare been enrolled before the register’s death. I admit, the party is not obliged to leave the deed with the clerk; but if he do not, he deals with it himself, I think, at his peril.
The case of ■Jtidky v. McQe-hte f uatt 2 ml. 40) doubted by Hums', J.
*145 Upon this ground therefore, I am of opinion, that it was shown the plaintiffs had no title, and that the judgment ought to be affirmed.
Per Curiam. — Jubgmekt reverse;?.